[No. 20145. Department Two. January 24, 1927.]

AMANDA J. PREST, *Respondent*, v. T. H. ADAMS, *Deputy Supervisor of Banking et al., Appellants.*[1]

[1] FRAUD (2)—DECEPTION CONSTITUTING—ELEMENTS—FIDUCIARY RELATIONS. A bank supervisor administering the estate of an insolvent bank does not stand in such a fiduciary relation to the creditors as to be responsible for misrepresenting the time within which it was necessary to file a claim against the estate.

[2] FRAUD (4)—DECEPTION CONSTITUTING—FRAUDULENT REPRESENTATIONS—MATTERS OF FACT OR OPINION. The supervisor of a bank administering the estate of an insolvent bank has no such knowledge of the law, superior to that of creditors, as to make him responsible for false representations as to the time within which claims against the estate must be paid, that being a matter of opinion as to the law for which he is not responsible (TOLMAN, J., dissents).

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered May 22, 1926, upon findings in favor of the plaintiff, in an action for fraud, tried to the court. Reversed.

*Miller, Wilkinson & Miller,* for appellants.

*Frank L. Walters,* for respondent.

ASKREN, J.—On September 4, 1923, the state supervisor of banking took charge of the Southwestern Washington Bank, of Ilwaco, Washington, because of its insolvent condition, and began to liquidate its affairs. In doing this, one T. H. Adams was appointed

[1]Reported in 252 Pac. 686.

special deputy supervisor and placed in active charge. Prior to September 4, 1923, the plaintiff deposited for safe keeping in the bank certain liberty bonds of the face value of one thousand one hundred dollars. When Adams took charge, these bonds could not be found, nor was there any evidence as to what became of them. He gave notice to all creditors to present their claims within ninety days. On the last day for filing such claims, a relative of the plaintiff appeared with an unverified claim for the amount represented by the bonds. She was notified that it should be verified, and Adams also told her that she need not be in any hurry as, under the law, she had six months within which to file the claim. Within the six-months period, a verified claim was presented, but was refused upon the ground that the law made ninety days the limit for presentation.

Without attempting to enforce the claim as against the bank and its assets, the claimant brought suit in tort against Adams personally and in his official capacity, and also against the supervisor and the bonding company. The gist of the action was that the plaintiff had been misled by Adams' statement that the law gave six months in which to file such claim, and that, therefore, she had lost her right to have her claim approved against the bank's assets; that the bonds represented a special deposit and were a preferred claim, and that the measure of her damages was the amount she would have received from the bank's assets had the claim been allowed.

After the trial, the court determined that plaintiff would have had a preferred claim against the bank; that she had been misled by Adams, and permitted recovery in the full amount against all the defendants.

The appellants raise a number of questions having

to do with whether the bonds were a special deposit or a bailment, the liability of the supervisor, and also the liability of the deputy supervisor in either capacity.

[1] The liability of the deputy supervisor is the pivotal point in the case, for, if there be no liability as to him, there can be none as to the rest, and the question of bailment or special deposit is immaterial.

The appellant insists that the voluntary statement of the deputy supervisor, which was conclusively established and found by the court to be honestly made, does not give rise to a cause of action, since the statement was not one that the respondent had a right to rely upon, and that it was merely an opinion as to what the law was, and that an honestly expressed opinion as to the law is not actionable. Respondent contends that the representation was as to a fact, i. e., as to what the statute says—either ninety days or six months, but that, even if it be construed to be a misrepresentation of law, the exceptions to the general rule are applicable to this case.

These exceptions are said to be: (1) where one has, or is in position to have, superior knowledge as to what the law is, and makes a positive statement thereon to another's detriment, and (2) where a fiduciary relationship exists, a misrepresentation may be relied on.

Passing to the second exception urged, we are unable to determine that any fiduciary relation exists between the claimant and the deputy supervisor. It is said that it existed because a liquidator holds the property in trust for the creditors; citing *Cook v. Martin,* 75 Ark. 40, 87 S. W. 625, and *Washington Mill Co. v. Sprague Lumber Co.,* 19 Wash. 165, 52 Pac. 1067. But we think those cited cases not controlling. It is true that a receiver holds the property in trust for the

creditors, but that does not mean that a fiduciary relation exists between a receiver and creditors prior to the approval or recognition of the validity of the claims. The duty to conserve the property for the benefit of all who may show themselves entitled to a part thereof is not the same as the contention here made that, before a claim is allowed, the receiver is acting with reference to its presentation in a fiduciary relation to the claimant. As a matter of fact, until the claim has been approved, the receiver rather stands, so far as its presentation is concerned, in somewhat of a hostile relation, since it is his duty to conserve the estate for those whose claims have been approved, and to refuse to sanction presented claims, unless satisfied that they are right. We think it clear, then, that there was no fiduciary relationship existing at the time the statement was made, so that any right to rely upon it would come therefrom.

[2] As to the claimed superior knowledge of the deputy supervisor, we are unable to conclude that the exception to the rule is so broad that a mere voluntary statement, by one who may be presumed to have read the statute and have knowledge of its contents, can give rise to a cause of action. The deputy supervisor is appointed because of his executive ability—not for his knowledge of the law. He has attorneys to advise him as to legal matters. The industry of counsel has brought no case to our attention that seems to be parallel to this one. This case is to be distinguished from those where one honestly makes a misstatement of fact and another, relying upon it, makes conveyance of property. In such an action, we have held that, even if the statement was honestly made, the party who received conveyance of property based thereon will be required to return it to the other who relied upon the

statement. *Pratt v. Thompson,* 133 Wash. 218, 233 Pac. 637; *Jacquot v. Farmers Straw Gas Producer Co.,* 140 Wash. 482, 249 Pac. 984.

But we find ourselves unable to agree that the statement was anything more than an opinion as to what the law required.

Assuming that the statement was not a mere voluntary declaration of the deputy supervisor, and that he had been asked regarding the matter—a situation incontrovertibly stronger than that shown by the evidence—the status of the parties would be this: the respondent wishing to file her claim asks the deputy supervisor what time she has under the law within which to make a legal filing. The deputy supervisor tells her "the law says you have six months". Is this anything more than an opinion as to what the law is? Respondent seeks to differentiate this case by saying that the time provided in the law is a fact, and that therefore the statement is one of fact. This argument is ingenious but unsound, since an opinion on the law does not become one of fact merely by reason of its simplicity, nor ease of determination. The question here presented is unlike that which might arise in case respondent had sought the advice of a lawyer and that given proved to be wrong. The ease of correctly determining the point might become a controlling issue in an action where the question of reasonable skill upon the lawyer's part was a material factor.

The case is very similar to one where a claimant asks an executor or administrator of an estate how long a time the claimant has for filing his claim. If the executor or administrator honestly thinks that the time is greater than that allowed by law and so says, could the claimant, who acted upon the opinion of the executor or administrator to his detriment, recover

against him? We think not. Illustrations of this character might be multiplied.

The general rule is that misrepresentations as to the law, unaccompanied by any misrepresentation or concealment of the fact, cannot be made the basis of a fraud charge.

In *Upton v. Tribilcock,* 91 U. S. 45, the court quoted approvingly from *Fish v. Clelland,* 33 Ill. 243, as follows:

"A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such. See *Star v. Bennett,* 5 Hill (N. Y.) 303; *Lewis v. Jones,* 4 B. & C. 506; *Rasdall v. Ford,* Law Rep. 2 Eq. Cas. 750."

Respondent has cited the case of *White v. Harrigan,* 78 Okl. 123, 186 Pac. 224, where the court said:

"The general rule that a misrepresentation of law affords no grounds of redress or relief has its exceptions, as is seen by the law laid down by the above textbook writers. One of the exceptions is that, where one of the parties has had a superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant, then a cause of action will lie as if the misrepresentation had been concerning a matter of fact."

In that case, both parties claimed title to certain property from a common grantor—the plaintiff through a warranty deed, and the defendant through a bill of sale unacknowledged or recorded. The defendant secured a deed from the plaintiff by representing that the bill of sale, by reason of its prior execution, was a valid transfer which deprived the plaintiff of all

rights. The court decreed a cancellation of the deed thus secured upon the ground that one of the parties therein, professing a superior knowledge of the law, had obtained an unconscionable advantage and that an action would lie, though it was a misrepresentation of the law. The court found that the fraud was knowingly practiced and required the return of that which was taken by an intentional misstatement of the law.

In the present case, there was no intentional misstatement, nor did the deputy supervisor receive anything, unless it be said that his trust was enlarged by the amount it would have been diminished if the claim had been approved and paid. But here, no action is brought nor claim urged against the trust fund. The great number of cases upon this question are not always to be clearly distinguished for the circumstances vary so in each one. We think the observation of the court in *Jordan v. Stevens*, 51 Me. 78, 81 Am. Dec. 556, is quite pertinent: ". . . If a party, who himself knows the law, should deceive another by misrepresenting the law to him or, knowing him to be ignorant of it, should therein take advantage of him, relief would be granted on the ground of fraud."

This case comes as nearly as any we can find which supports the theory of appellant. But, measured by this rule, there can be no recovery here. In the first place, the appellant did not know the law, and secondly, there was no attempt to take advantage of the respondent, knowing her to be ignorant of it.

It is unfortunate for respondent that the incorrect statement regarding the law was made. But it was made without intent to inform wrongfully, was gratuitously given without desire or intent to profit thereby by one who stood in no fiduciary relation to respondent, and whose judgment or opinion as to the law, if wrong, and acted upon, gives no cause of action.

The judgment is reversed, with instructions to dismiss the action.

MACKINTOSH, C. J., PARKER, and BRIDGES, JJ., concur.

TOLMAN, J., dissents.